FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
\* JANUARY 24, 2024 \*
BROOKLYN OFFICE

HDM/DGR:NJM/MS
F. #2020R00627

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

ALAN JOHN HANKE,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. **24-CR-27**
(T. 18, U.S.C., §§ 152(3), 157, 371, 981(a)(1)(C), 982(a)(1), 982(b)(1), 1343, 1349, 1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

**Judge Ramon E. Reyes**
**Magistrate Judge Sanket J. Bulsara**

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    <u>Background - The Defendant, Relevant Individuals and Entities, and Definitions</u>

      1.    The defendant ALAN JOHN HANKE ("ALAN HANKE" or "HANKE") was a citizen of the United States who resided in Illinois.

      2.    Co-Conspirator 1, an individual whose identity is known to the Grand Jury, was a citizen of the United States who resided in Texas.

      3.    Co-Conspirator 2, an individual whose identity is known to the Grand Jury, was a citizen of the United States who resided in Georgia and who was licensed to practice law in Georgia.

      4.    IOLO Global LLC ("IOLO Global") was a limited liability company incorporated in Wyoming, of which the defendant ALAN HANKE was the sole member. IOLO Global purported to be an investment company run by HANKE.

5. Bala Trading LLC ("Bala") was a limited liability company incorporated in Wyoming, of which the defendant ALAN HANKE was the sole member. Bala purported to be an investment company with 17 years of trading experience, which was run by HANKE.

6. Trust-1 and Trust-2, trusts the identities of which are known to the Grand Jury, were trusts established with Co-Conspirator 1 as the trustee.

7. A standby letter of credit ("SBLC") referred to a legal document that guaranteed a bank's commitment to pay a seller should the bank's client renege on an agreement. SBLCs were intended to assist parties with no prior business history to engage in business deals, because the seller could provide goods with the assurance that it would receive payment in connection with the transaction.

II. The Fraudulent Schemes

A. The Investment Scheme

8. In or about and between November 2018 and August 2021, the defendant ALAN HANKE, Co-Conspirator 1 and Co-Conspirator 2, together with others, conspired to defraud clients of IOLO Global and Bala through a series of misrepresentations and omissions. Specifically, HANKE falsely promised clients and potential clients that IOLO Global or Bala would invest their money (often in SBLCs, which HANKE characterized as high-yield instruments, and at other times "high yield bonds" or "medium term notes") and produce large returns within short periods of time. HANKE persuaded his victims that he was a sophisticated investor with access to high-yield instruments and guaranteed that the investments were protected by highly-rated sureties. In truth, rather than investing his clients' money, HANKE misappropriated his clients' investment funds, transferring them to his co-conspirators, to other associates, to his private accounts, to other clients, and for his personal use.

9.      In furtherance of the scheme, the defendant ALAN HANKE entered into investment agreements, typically styled as "Management and Deposit Agreements" ("MDAs"), between the clients and IOLO Global or Bala.  The MDAs typically represented that IOLO Global or Bala would manage the clients' funds in a "fiduciary capacity" and would invest the funds "into one or more asset enhancement transactions," specifying the amounts that the clients would invest and the schedules on which they would realize their substantial returns.

10.     For example, a December 14, 2018 MDA between Bala and Client-1, an individual based outside of the United States whose identity is known to the Grand Jury, provided that Client-1 would transfer $1 million to an account operated by a law firm no later than January 11, 2019, in exchange for which Bala would "retain[] for use in a subsequent transaction" "a payment equivalent to Five Million United States Dollars."  That MDA further provided that Client-1's "entire Deposit is insured by private deposit Surety . . . issued by a syndication of Surety companies, each rated 'A' or better by" a specified credit rating agency for insurance companies ("Credit Agency 1").  The MDA further contained the promise that Bala would "fulfill its mandate in a fiduciary capacity," and represented that Bala would place Client-1's Assets into one or more "asset enhancement transactions . . . to be structured for Client[-1] by Bala."  In separate paperwork the defendant ALAN JOHN HANKE provided to Client-1, HANKE promised to secure reinsurance "in an amount equal to the deposit amount" "through Lloyd's of London."  He did not obtain that reinsurance.  Instead, HANKE transferred funds to Co-Conspirator 1, the trustee for Trust-1 and Trust-2, which issued surety bonds that could not be redeemed.  Co-Conspirator 1 declared bankruptcy in or about March 2021.  Trust-1 and Trust-2 did not reimburse the millions of dollars lost by Client-1 or HANKE's other clients, despite the assurances that the investments were entirely guaranteed.

11. A March 12, 2019 MDA between IOLO Global and Client-2, an individual based outside of the United States whose identity is known to the Grand Jury, included substantially identical language with respect to the insurance guarantee, the fiduciary guarantee, and the promise of asset enhancement transactions. The MDA provided that Client-2 would transfer "the equivalent of Three Million United States Dollars ($3,000,000.00)" to IOLO Global, courtesy of an account in the name of Co-Conspirator 2, and that 50 "international bank days" later, "a payment equivalent to Two Million Four Hundred Thousand United States Dollars ($2,400,000.00) shall be paid directly into [Client-2's] account." Moreover, it provided that every 20 "international banking days"—or approximately four weeks—thereafter, another $2,400,000 payment would be made to Client-2, "for a total of eleven (11) consecutive payments unless otherwise notified." In other words, the defendant ALAN HANKE promised Client-2 $26.4 million in return for Client-2's $3 million investment. Although the MDA did not specify in which vehicles IOLO Global would invest, HANKE separately represented that IOLO Global would invest in a managed program for financial instruments. The March 12, 2019 MDA was the subject of numerous addenda, pursuant to which HANKE increased the promised returns for Client-2's investment, ultimately agreeing to provide Client-2 with $112 million in returns. Client-2 made the initial deposit required under the contract—specifically, on or about March 27, 2019, Client-2 transferred $3 million from an account held abroad, through a correspondent account held in New York, New York, to an account held by Co-Conspirator 2. Client-2 did not receive payment as provided under the MDA and lost his initial deposit.

12. Similarly, an April 22, 2019 MDA between IOLO Global and Corporate Investor-1, a corporation with headquarters in the Eastern District of New York, the identity of which is known to the Grand Jury, represented that IOLO Global would "fulfill its mandate in a

fiduciary capacity," and that IOLO Global would "place [Corporate Investor-1's] [a]ssets into one or more asset enhancement transactions [] to be structured for Client by IOLO, to produce the desired funding referenced in Appendix B herein. Specifically, the lease and monetization of financial instruments for onward trading in Buy/Sell arrangements in which arbitrage has already been negotiated." The MDA did not specify in which "financial instruments" IOLO Global would invest. The MDA, which the defendant ALAN JOHN HANKE negotiated and signed on behalf on IOLO Global, provided that Corporate Investor-1 would provide $350,000 through the Manhattan branch of a financial institution and into an escrow account in the name of Co-Conspirator 2. It also provided that, 50 "international banking days following the release of Escrow," IOLO Global would pay Corporate Investor-1 "Eleven Million United States Dollars ($11,000,000.00)."

13. In accordance with the April 22, 2019 MDA between IOLO Global and Corporate Investor-1, between May 8, 2019 and May 9, 2019, approximately $350,000, belonging to three clients whose identities are known to the Grand Jury ("Client-3," "Client-4" and "Client-5"), was transferred from a bank branch in New York, New York, to the account held by Co-Conspirator 2. Although Client-3, Client-4 and Client-5 together paid $350,000 to IOLO Global, they did not receive any payments in return and lost their initial deposits.

14. A July 29, 2019 MDA between Client-2 and IOLO Global included substantially identical language with respect to the insurance guarantee, the fiduciary guarantee and the promise of asset enhancement transactions. This agreement, which the defendant ALAN JOHN HANKE negotiated and signed on behalf on IOLO Global, provided that Client-2 would transfer $3,500,000 to an account in the name of Co-Conspirator 2, and in return, 45 "calendar days" later, IOLO Global agreed to pay Client-2 $10,500,000. The July 29, 2019

MDA was later subject to an addendum that increased the promised return to $22.5 million. Like with the March 12, 2019 MDA between Client-2 and IOLO Global, Client-2 made the initial deposit required under the July 29, 2019 MDA but did not receive payment as provided under the contract and lost his initial deposit. Specifically, on or about August 8, 2019, Client-2 transferred $3.5 million from an account held abroad, through a correspondent account held in New York, New York, to an account held by Co-Conspirator 2. Client-2 did not receive payment as provided under the MDA and lost his initial deposit.

15. An August 29, 2019 MDA between IOLO Global and Client-6, an individual whose identity is known to the Grand Jury, included substantially identical language to the agreements set out above with Clients-1 through -5 with respect to the fiduciary guarantee and the promise of asset enhancement transactions. Although it also required IOLO Global to "ensure that the funds are not released or transferred from" the account to which they would be paid and provided that "the entire Deposit is insured by private deposit Surety . . . issued by a syndication of Surety companies or Trust, and paid for by IOLO," it did not specify that the surety companies would be rated by specific credit agencies. The MDA, which the defendant ALAN JOHN HANKE negotiated and signed on behalf on IOLO Global, provided that Client-6 would transfer $400,000 to an account in the name of Co-Conspirator 2, and that approximately 50 international banking days later, $1,600,000 "will be deposited to [Client-6's] Account." Client-6 made the initial deposit required under the contract and did not receive payment as provided under the MDA. Client-6 also lost the majority of the initial deposit.

16. A November 15, 2019 MDA was also executed between Client-1 and IOLO Global. In this MDA, which the defendant ALAN JOHN HANKE negotiated and signed on behalf on IOLO Global, Client-1 agreed to deposit $1,000,000 into an account in the name of

Co-Conspirator 2, and IOLO Global agreed to transfer $5,000,000 to Client-1 approximately 50 "banking days" later. Client-1 made the initial deposit required under the contract but did not receive payment as provided under the MDA and lost his initial deposit. Client-1 wired $299,975 on or about December 10, 2019, and another $699,975 on or about December 23, 2019, from an account held abroad, through a correspondent bank account in New York, New York, to a bank account held by Co-Conspirator 2.

17. Contrary to the representations made by the defendant ALAN HANKE to the clients, the client funds were not invested in a way that could have yielded profitable returns. Much of the money that the clients invested was diverted to HANKE's personal benefit, and other portions were diverted to Co-Conspirator 1, Co-Conspirator 2, HANKE's other associates and clients who steered additional investors to the scheme.

18. After fraudulently obtaining client funds, the defendant ALAN HANKE also executed a series of financial transactions with the purposes of promoting the Investment Scheme and to conceal the true nature of the criminal proceeds. For example, proceeds from the Investment Scheme were deposited into accounts operated by Co-Conspirator 2. Thereafter, HANKE caused Co-Conspirator 2 to transfer some of the proceeds of this fraud to HANKE for his personal use, including approximately up to 50 percent of the funds invested by Client-1 through Client-6. HANKE spent this money, which was provided to him by his clients to invest, on expenses from Carnival Cruises, airfare and hotels, gambling expenses, a 2018 Cadillac CT6 and other goods and services for his personal use. HANKE also used proceeds obtained from the Investment Scheme to pay prior clients, which gave the appearance that HANKE would pay his current clients. HANKE did not pay all of his clients, but at times approximately 10 percent of client funds were used to pay prior clients.

B. <u>The Bankruptcy Fraud</u>

19. The defendant ALAN HANKE filed a Chapter 7 bankruptcy petition (the "Petition") on June 9, 2021, in the Northern District of Illinois, Western Division. HANKE also caused IOLO Global to file a Chapter 7 bankruptcy petition, and he personally signed both under penalty of perjury. HANKE then attempted to use these pending bankruptcy proceedings to discharge the debts he owed to IOLO Global and Bala investors, including Client-1, Client-2 and Client-6. Throughout the bankruptcy proceedings, HANKE made multiple materially false statements and omissions.

20. The Petition included a disclosure that the defendant ALAN HANKE earned a $1,440 monthly income from Social Security and Disability, and business incomes of $184,000 in 2019, $384,000 in 2020 and $0 in 2021. These amounts were substantially lower than HANKE's actual income, including his personal receipt of funds from IOLO Global. HANKE also claimed an interest in Trust-1 with a value of $9,450,000.

21. The defendant ALAN HANKE claimed in the Petition that he had not made any payments for the benefit of a family member or close friend within the prior year. He also noted that he lived with a close relative ("Individual-1"), an individual whose identity is known to the Grand Jury. However, contrary to his claim, HANKE had made $20,000 in pre-Petition payments on Individual-1's debts, as well as payments to make repairs on Individual-1's home (discussed below), which he failed to disclose to the United States Trustee.

22. The defendant ALAN HANKE also failed to disclose to the U.S. Trustee that, in early 2021, HANKE sold an airplane that belonged to one of his businesses, and used the proceeds for personal expenses, including gambling and repairs to Individual 1's home, as well

as withdrawing over $180,000 in cash. Instead, HANKE falsely claimed that the proceeds from the airplane sale had been returned to the company.

23. In September 2021, the defendant ALAN HANKE sold a pontoon boat and admitted that he had made a profit on that sale. Despite HANKE's repeated assurances that he had mailed the proceeds of the sale to the United States Trustee, the United States Trustee did not receive the proceeds.

24. In addition, the defendant ALAN HANKE failed to provide books and records to the United States Trustee upon request and made false statements under oath regarding his work as an investment broker.

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

25. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

26. In or about and between November 2018 and August 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ALAN JOHN HANKE, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud investors and potential investors in Bala and IOLO Global and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Commit Securities Fraud)

27. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

28. In or about and between November 2018 and August 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ALAN JOHN HANKE, together with others, did knowingly and willfully conspire to use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in IOLO Global, in connection with the purchase and sale of SBLC investments, high yield bonds and medium term notes, directly and indirectly, by use of means and instrumentalities of instate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

29. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant ALAN JOHN HANKE, together with others, committed and caused the commission of, among others, the following:

### OVERT ACTS

a. On or about October 10, 2018, HANKE emailed Individual-2, whose identity is known to the Grand Jury, who forwarded the email to Client-1, providing that

Client-1's investments with HANKE would be "fully insured against loss/non-performance" "through a reinsurance to Lloyds of London," among other representations.

  b.  In or about December 2018, HANKE and Client-1 executed an MDA, providing terms under which Client-1 would invest $1,000,000 with Bala.

  c.  On or about February 10, 2019, Employee-1, an individual whose identity is known to the Grand Jury, traveled through John F. Kennedy International Airport ("JFK Airport") in Queens, New York, en route to meet with HANKE.

  d.  On or about February 11, 2019, Employee-1 and Consultant-1, an individual whose identity is known to the Grand Jury, met with HANKE in New York, New York, regarding Client-2's potential investment with HANKE. At that meeting, HANKE showed Employee-1 and Consultant-1 bank statements purporting to show payments based on HANKE's prior successful investments.

  e.  On or about February 15, 2019, Employee-1 traveled through JFK Airport to return home after the meeting with HANKE.

  f.  On or about March 12, 2019, Client-2 and HANKE entered into an MDA, providing terms under which Client-2 would invest $3 million with IOLO Global.

  g.  On or about March 27, 2019, Client-2 wired $3 million into a bank account held by Co-Conspirator 2. This wire was processed through a bank in New York, New York.

  h.  On or about April 22, 2019, Corporate Investor-1 and HANKE entered into an MDA providing terms under which Corporate Investor-1 would invest $350,000 with IOLO Global.

   i.  On or about May 8, 2019, $150,000 was transferred from a bank branch in New York, New York, into the account held by Co-Conspirator 2.

   j.  On or about May 9, 2019, $200,000 was transferred from a bank branch in New York, New York, into the account held by Co-Conspirator 2.

   k.  On or about July 29, 2019, Client-2 and HANKE entered into another MDA, providing terms under which Client-2 would invest an additional $3.5 million with IOLO Global.

   l.  On or about August 8, 2019, Client-2 wired $3.5 million into a bank account held by Co-Conspirator 2. This wire was processed through a bank in New York, New York.

   m.  On or about August 9, 2019, HANKE arranged for $249,375 to be wired to his personal account from the account held by Co-Conspirator 2.

   n.  On or about August 23, 2019, HANKE arranged for $448,987 to be wired to his personal account from the account held by Co-Conspirator 2.

   o.  On or about August 29, 2019, Client-6 and HANKE entered into an MDA, providing terms under which Client-6 would invest $400,000 with IOLO Global.

   p.  In or about September 2019, Client-6 wired $400,000 to a bank account held by Co-Conspirator 2.

   q.  On or about November 15, 2019, Client-1 and HANKE entered into an MDA, providing terms under which Client-1 would invest $1,000,000 with IOLO Global.

   r.  On or about December 10, 2019, $299,975 was wired to a bank account held by Co-Conspirator 2. This wire was processed through a bank in New York, New York.

  s. On or about December 23, 2019, $699,975 was wired to a bank account held by Co-Conspirator 2. This wire was processed through a bank in New York, New York.

  t. On or about and between December 18, 2019, and January 24, 2020, HANKE arranged for $628,425 to be wired to his personal account from the bank account held by Co-Conspirator 2.

  u. On or about January 10, 2020, Employee-1, Consultant-1 and HANKE met in New York, New York, to discuss HANKE's failure to pay Client-2 the money he was owed. HANKE represented that he had a problem with a trading account but that he would pay Client-2 using funds available to him. That payment did not occur.

  v. On or about June 16, 2020, HANKE emailed Client-1 to advise that Client-1's $5.2 million—the purported returns of Client-1's investment—would be arriving imminently. The funds did not arrive.

  w. On or about June 9, 2021, HANKE filed the Petition in the Northern District of Illinois, in which he understated his income and attempted to shield assets and payments to his friends and family.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT THREE
(Conspiracy to Commit Money Laundering)

30. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

31. In or about and between November 2018 and August 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ALAN JOHN HANKE, together with others, did knowingly and intentionally conspire

to conduct one or more financial transactions in and affecting interstate and foreign commerce, to wit: the transfer of United States currency, which transactions in fact involved the proceeds of specified unlaw activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property to be involved in such transactions would represent the proceeds of some form of unlawful activity and (a) with the intent to promote the carrying on of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i); (b) knowing that the financial transactions were designed in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and (c) knowing that the proceeds involved were derived from specified unlawful activity and were of a value greater than $10,000, contrary to Title 18, United States Code, Sections 1957(a) and 1957(d)(1).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNTS FOUR THROUGH SEVEN
(Wire Fraud)

32. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

33. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant ALAN JOHN HANKE, together with others, did knowingly and intentionally devise a scheme and artifice to defraud investors with IOLO Global, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, HANKE, together with others, did knowingly and intentionally transmit and cause to be transmitted by means of wire communication in interstate commerce, one or more writings, signs, signals, pictures and sounds, as set forth below:

| COUNT | APPROXIMATE DATE | WIRE COMMUNICATION | VICTIM |
|---|---|---|---|
| FOUR | March 27, 2019 | Wire transfer in the amount of $3 million from a bank account held abroad, through an account in New York, New York, to the account held by Co-Conspirator 2 | Client-2 |
| FIVE | August 8, 2019 | Wire transfer in the amount of $3.5 million from a bank account held abroad, through an account in New York, New York, to the account held by Co-Conspirator 2 | Client-2 |
| SIX | December 10, 2019 | Wire transfer in the amount of $299,975 from a bank account held abroad, through an account in New York, New York, to the account held by Co-Conspirator 2 | Client-1 |
| SEVEN | December 23, 2019 | Wire transfer in the amount of $699,975 from a bank account held abroad, through an account in New York, New York, to the account held by Co-Conspirator 2 | Client-1 |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT EIGHT
(False Bankruptcy Declaration)

34. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

35. In or about and between June 2021 and August 2021, both dates being approximate and inclusive, within the Northern District of Illinois, the defendant ALAN JOHN HANKE, together with others, did knowingly, intentionally and fraudulently make a false declaration, certificate, verification and statement under penalty of perjury as permitted under

Section 1746 of Title 28, in and in relation to a case under Title 11, to wit: falsely stating the amount of income he received during the years of 2019 and 2020.

(Title 18, United States Code, Sections 152(3), 2 and 3551 et seq.)

## COUNT NINE
(Bankruptcy Fraud)

36. The allegations contained in paragraphs one through 24 are realleged and incorporated as if fully set forth in this paragraph.

37. In or about and between June 2021 and August 2021, both dates being approximate and inclusive, within the Northern District of Illinois, the defendant ALAN JOHN HANKE, together with others, having devised and intending to devise a scheme and artifice to defraud and for the purpose of executing and concealing such scheme and artifice and attempting to do so, did knowingly and intentionally file a petition, and a document in a proceeding, under Title 11 of the United States Code, to wit: the Petition and documents filed on the docket in relation to the Petition.

(Title 18, United States Code, Sections 157, 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE, TWO AND FOUR THROUGH NINE

38. The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts One, Two and Four through Nine, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

39. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT THREE

40. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

41. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

     e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

    (Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

*Breon Peace*
_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2020R00627

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

ALAN JOHN HANKE,

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 152(3), 157, 371, 981(a)(1)(C), 982(a)(1), 982(b)(1), 1343, 1349, 1956(h), 2 and 3551 *et seq*.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____ndee_____
                                                                         *Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
                                                                             *Clerk*

*Bail, $* _____

_____

*Nicholas J. Moscow, Matthew Skurnik, Assistant U.S. Attorneys (718) 254-7000*